FILED
CLERK, U.S. DISTRICT COURT

03/24/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____KSS_____ DEPUTY

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DANIEL J. O'BRIEN (Cal. Bar No. 141720)
Assistant United States Attorney
Deputy Chief, Public Corruption & Civil Rights Section
Central District of California
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2468
    Facsimile: (213) 894-7631
    E-mail:   daniel.obrien@usdoj.gov
EVAN N. TURGEON
Trial Attorney
    U.S. Department of Justice
    National Security Division
    Counterintelligence & Export Control Section

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR    2:22-cr-00104-PA |
|---|---|
| Plaintiff, | DOCUMENT |
| v. | [PLEA AGREEMENT] |
| RICHARD GUSTAVE OLSON, JR., | [**UNDER SEAL**] |
| Defendant. | |

1.   This constitutes the plea agreement between Richard Gustave Olson, Jr. ("defendant"), the United States Attorney's Office for the Central District of California ("the USAO"), and the United States Department of Justice ("DOJ") in the above-captioned case.  This agreement is limited to the USAO and DOJ and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

1

<u>DEFENDANT'S OBLIGATIONS</u>

2       2.   Defendant agrees to:

3           a.   Give up any right to indictment by a grand jury and,
4   at the earliest opportunity requested by the USAO and provided by the
5   Court, appear and plead guilty to a two-count information in the form
6   attached to this agreement as Exhibit A or a substantially similar
7   form, which charges defendant with violations of 18 U.S.C. § 1018,
8   Making a False Writing, and 18 U.S.C. §§ 207(f)(1)(B), 216(a)(1),
9   Aiding and Advising a Foreign Government with Intent to Influence
10  Decisions of United States Officers.  The plea shall take place in
11  either the United States District Court for the District of Columbia
12  or for the Eastern District of Virginia at the election of the
13  USAO/DOJ. The USAO/DOJ agree that at the time of his initial
14  appearance, defendant may be released on his personal recognizance.

15          b.   Not contest facts agreed to in this agreement.

16          c.   Abide by all agreements regarding sentencing contained
17  in this agreement.

18          d.   Appear for all court appearances, surrender as ordered
19  for service of sentence, obey all conditions of any bond, and obey
20  any other ongoing court order in this matter.

21          e.   Not commit any crime; however, offenses that would be
22  excluded for sentencing purposes under United States Sentencing
23  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
24  within the scope of this agreement.

25          f.   Be truthful at all times with the United States
26  Probation and Pretrial Services Office and the Court.

27

28

1     g.   Pay the applicable special assessments at or before

2  the time of sentencing unless defendant has demonstrated a lack of

3  ability to pay such assessments.

4                        THE USAO'S OBLIGATIONS

5     3.   The USAO agrees to:

6          a.   Not contest facts agreed to in this agreement.

7          b.   Abide by all agreements regarding sentencing contained

8  in this agreement.

9          c.   At the time of sentencing, provided that defendant

10 demonstrates an acceptance of responsibility for the offenses up to

11 and including the time of sentencing, recommend a two-level reduction

12 in the applicable Sentencing Guidelines offense level, pursuant to

13 U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

14 additional one-level reduction if available under that section.  The

15 parties anticipate that defendant's guideline level will be below the

16 threshold necessary for an additional one-level reduction to be

17 available.

18         d.   Not further criminally prosecute defendant for

19 violations of 18 U.S.C. § 201(c)(1)(B), Public Official Receiving

20 Illegal Gratuity, related to September 2015 payments totaling $25,000

21 to a person with whom defendant had a personal relationship, 18

22 U.S.C. § 1519, Destruction of Documents, arising out of the deletion

23 of emails pertaining to work performed for the Qatar Government,

24 violations of 18 U.S.C. § 1001, False Statements, related to any

25 statements made by defendant during the pendency of the government's

26 investigation, 18 U.S.C. §208(a) Acts Affecting a Personal Financial

27 Interest, or any other violations of law relating to conduct

28 described in the factual basis of this plea agreement or the

3

1  information.  Defendant understands that the USAO is free to

2  criminally prosecute defendant for any other unlawful past conduct or

3  any unlawful conduct that occurs after the date of this agreement.

4  Defendant agrees that at the time of sentencing the Court may

5  consider the uncharged conduct in determining the applicable

6  Sentencing Guidelines range, the propriety and extent of any

7  departure from that range, and the sentence to be imposed after

8  consideration of the Sentencing Guidelines and all other relevant

9  factors under 18 U.S.C. § 3553(a).

10      4.  Recommend that defendant be sentenced to a term of

11  imprisonment within the applicable Sentencing Guidelines range.

12                       <u>NATURE OF THE OFFENSES</u>

13      5.  Defendant understands that for defendant to be guilty of

14  the crime charged in Count One, Making a False Writing, in violation

15  of 18 U.S.C. § 1018, the following must be true:

16          a.  First, the defendant was a public officer employed by

17  the U.S. Department of State authorized to make a certificate or

18  writing, namely, an Office of Government Ethics Public Financial

19  Disclosure Report, Form 278;

20          b.  Second, the defendant knowingly made and delivered the

21  Form 278 as true, knowing that it contained a false statement; and

22          c.  Third, the writing was material to the activities or

23  decisions of the U.S. Department of State and Office of Government

24  Ethics; that is, it had a natural tendency to influence, or was

25  capable of influencing, agency decisions or activities.

26      6.  Defendant understands that for defendant to be guilty of

27  the crime charged in Count Two, Aiding and Assisting a Foreign

28  Government with Intent to Influence Decisions of United States

Officers in violation of 18 U.S.C. §§ 207(f)(1)(B) and 216(a)(1), the government must prove the following:

      a.   First, during his last year of employment with the U.S. Government, defendant's basic pay was over $160,112 (thereby making him a covered person under 18 U.S.C. § 207(c));

      b.   Second, defendant knowingly aided or advised a foreign entity, that is, the government of Qatar;

      c.   Third, defendant intended to influence a U.S. governmental decision or decisions through his aiding or advising; and

      d.   Fourth, defendant's prohibited activities occurred within one year after leaving the government job referenced above.

<u>PENALTIES</u>

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1018, is: one year' imprisonment; a one-year period of supervised release; a fine of $100,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $25.

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 207(f)(1)(B) and 216(a)(1) is: one year' imprisonment; a one-year period of supervised release; a fine of $100,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $25.

9.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: two years' imprisonment; a one-year period of supervised release; a

fine of $200,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $50.

10.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

<u>FACTUAL BASIS</u>

12.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty

to the charges described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 14 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

<u>False Writing</u>

On January 27, 2015, while serving as the U.S. Ambassador to
Pakistan, defendant received from a third-party, first-class,
round trip airfare tickets from New Mexico, via Los Angeles, to
London and lodging at a hotel in London for the purpose of
attending a job interview.  Defendant also received from the
same third-party lodging at a hotel in London for the period
January 30 through February 2, 2015.  The value of the airfare
exceeded $18,000 and the value of the hotel accommodation
exceeded $1,000.

As a senior U.S. Government official, defendant was required to
file public financial disclosure reports on an annual basis.
The annual reports, known as OGE Forms 278, required the
employee to disclose financial matters including income, assets,
liabilities, outside employment arrangements, gifts,
reimbursements, and travel expenses.

On May 12, 2016, defendant electronically signed and submitted
his annual OGE Form 278 for the 2015 calendar year, in which he
certified his answers were "true, complete and correct to the
best of my knowledge."  In this OGE Form 278, defendant
knowingly and willfully failed to disclose, as required, the
travel benefits he received, namely, the roundtrip airfare
between New Mexico and London and the lodging in London
collectively worth over $19,000.

On September 1, 2016, the OGE Form 278 was signed by a
Designated Ethics Official for the U.S. State Department who
opined, "On the basis of information contained in this report, I
conclude that the filer is in compliance with applicable laws
and regulations."

<u>Cooling-Off Period Violations</u>

From November 17, 2015 through November 30, 2016, defendant
served as the U.S. Special Representative for Afghanistan and
Pakistan and received a base salary of $182,328.  Defendant's
position and salary placed him within a category of senior

government officials subject to a one-year cooling-off period that prohibited him from representing any foreign entity before any employee of any agency of the United States, or from providing aid or advice to any foreign entity with the intent to influence a decision of any employee of the United States.

Within the one-year cooling-off period after his November 30, 2016 retirement, defendant provided aid and advice to the government of Qatar with the intent to influence decisions of U.S. government officials.

Beginning on February 14, 2017, defendant participated in a lobbying effort to convince the U.S. Government to endorse the establishment of U.S. Customs and Border Control preclearance facilities at Doha International Airport in Qatar.  Defendant helped draft a proposal that was sent to the Qatar government which explained how preclearance facilities could be achieved. Defendant provided "two elements to the proposal in terms of selling this to Washington," recommending that the Qataris leverage their close military partnership with the United States and emphasize the positive experience the United States experienced with respect to the establishment of similar preclearance facilities in Abu Dhabi.

On or about June 6, 2017, defendant participated in a lobbying effort to convince the U.S. Government to support Qatar in its efforts to oppose a blockade imposed upon it by its neighbors. Defendant's aid included recruiting a retired U.S. General ("the "General") to join defendant OLSON in providing aid and advice to Qatari government officials with the intent to influence U.S. foreign policy with respect to the Gulf Diplomatic Crisis.

As part of his efforts to aid the Qatar Government, on June 6, 2017, defendant recruited the General, who was working at a Washington D.C. think tank, to enlist his support in the endeavor.  On June 7, 2017, defendant met with the General, a third party, and others a hotel in Washington, D.C. at which time the General explained how he would conduct the lobbying and public relations campaign.  On June 8, 2017, the third party agreed to pay for the expenses of defendant and the General to travel to Doha to meet with the Emir and representatives of the Qatar Government.  At the time, defendant was being paid $20,000 per month to provide services to the third party.  The third party agreed to pay the General a fee for his efforts.

On June 10, 2017, defendant and the General met with the Qatar Emir and other representatives of his government.  Defendant and the General told the Qatari government officials that they had traveled to Qatar as private citizens, not on behalf of the U.S.

8

government, but noted that they had connections with U.S. government officials that placed them in a position to help Qatar.

During the meetings, the General advised the Qatar government officials to embrace U.S. involvement in resolving the crisis, accept President Trump's offer to mediate, sign a pending deal to purchase U.S. F-15 fighter jets, and use the U.S. Al Udeid Air Base in Qatar as leverage to exert influence over U.S. government officials. The Qatari officials were further advised to compete with Saudi Arabia's lobbying campaign in the U.S. and to use a full spectrum of information operations to control the political narrative in the United States. The General informed the Qatar Government that they would use the U.S. National Security Advisor to further their efforts.

From June 9 through June 15, 2017, with the defendant's knowledge, the General solicited the help of the National Security Advisor and his staff to support the Qatar's position with respect to the crisis. On June 15, 2017, defendant, the General, and a third party met with a senior Qatar Government Official and informed him the U.S. National Security Advisor and another senior U.S. government official had been briefed on their efforts to convince the United States to support Qatar's cause.

On June 16, 2017, the General reported to defendant, the third party, and a senior Qatar Government Official that he personally asked the National Security Advisor to meet with senior Qatar officials and that while an "embassy request has to work its way up, our request will come down from above."

On June 23, 2017, the General stated that two senior Qatar Government Officials would be visiting Washington, D.C. the next week and asked the National Security Advisor to meet with them.

On June 28, 2017, defendant attended a dinner with the General, representatives of the Qatar Government, and members of Congress in an effort to enlist Congress to support the Qatari cause.

SENTENCING FACTORS

13. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set

forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds
appropriate up to the maximum set by statute for the crimes of
conviction.

14.  Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| 1018 Base Offense Level | 6 | U.S.S.G. § 2B1.1 |
| 207(f) Base Offense Level | 6 | U.S.S.G. § 2C1.3 |
| Grouping enhancement | +2 | U.S.S.G. §§ 3D1.1 – 1.4 |
| Combined Offense Level | 8 | U.S.S.G. § 3D1.4 |
| Acceptance of Responsibility [If appropriate under ¶ 3.c] | -2 | U.S.S.G.§ 3E1.1 |

15.  Defendant and the USAO reserve the right to argue that
additional specific offense characteristics, adjustments, and
departures under the Sentencing Guidelines are appropriate.

16.  Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

17.  Defendant understands that by pleading guilty, defendant
gives up the following rights:

a.    The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel – and if
necessary have the Court appoint counsel - at trial.  Defendant

understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF VENUE

18. Having been fully advised by defendant's attorney regarding the requirements of venue with respect to the offenses to which defendant is pleading guilty, to the extent the offenses to which defendant is pleading guilty were committed, begun, or completed outside the venues of the Central District of California, Eastern District of Virginia, or District of Columbia defendant knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have to be prosecuted only in the district where the offenses to which defendant is pleading guilty were committed, begun, or completed; and (b) any defense, claim, or

1   argument defendant could raise or assert based upon lack of venue

2   with respect to the offenses to which defendant is pleading guilty.

3   <u>WAIVER OF APPEAL OF CONVICTION</u>

4      19.  Defendant understands that, with the exception of an appeal

5   based on a claim that defendant's guilty pleas were involuntary, by

6   pleading guilty, defendant is waiving and giving up any right to

7   appeal defendant's convictions on the offenses to which defendant is

8   pleading guilty.  Defendant understands that this waiver includes,

9   but is not limited to, arguments that the statutes to which defendant

10  is pleading guilty are unconstitutional, and any and all claims that

11  the statement of facts provided herein is insufficient to support

12  defendant's pleas of guilty.

13  <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

14     20.  Defendant agrees that, provided the Court imposes a total

15  term of imprisonment on all counts of conviction within or below the

16  range corresponding to an offense level of 8 and the criminal history

17  category calculated by the Court, defendant gives up the right to

18  appeal all of the following: (a) the procedures and calculations used

19  to determine and impose any portion of the sentence; (b) the term of

20  imprisonment imposed by the Court; (c) the fine imposed by the Court,

21  provided it is within the statutory maximum; (d) to the extent

22  permitted by law, the constitutionality or legality of defendant's

23  sentence, provided it is within the statutory maximum; (e) the term

24  of probation or supervised release imposed by the Court, provided it

25  is within the statutory maximum; and (d) any of the following

26  conditions of probation or supervised release imposed by the Court:

27  the conditions set forth in Second Amended General Order 20-04 of

28  this Court; the drug testing conditions mandated by 18 U.S.C.

1 §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions

2 authorized by 18 U.S.C. § 3563(b)(7).

3     21.  The USAO agrees that, provided (a) all portions of the

4 sentence are at or below the statutory maximum, the USAO gives up its

5 right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

7     22.  Defendant agrees that if, after entering guilty pleas

8 pursuant to this agreement, defendant seeks to withdraw and succeeds

9 in withdrawing defendant's guilty pleas on any basis other than a

10 claim and finding that entry into this plea agreement was

11 involuntary, then (a) the USAO will be relieved of all of its

12 obligations under this agreement, and (b) should the USAO choose to

13 pursue any charge that was either dismissed or not filed as a result

14 of this agreement, then (i) any applicable statute of limitations

15 will be tolled between the date of defendant's signing of this

16 agreement and the filing commencing any such action; and

17 (ii) defendant waives and gives up all defenses based on the statute

18 of limitations, any claim of pre-indictment delay, or any speedy

19 trial claim with respect to any such action, except to the extent

20 that such defenses existed as of the date of defendant's signing this

21 agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

23     23.  Defendant agrees that if any count of conviction is

24 vacated, reversed, or set aside, the USAO may: (a) ask the Court to

25 resentence defendant on any remaining count of conviction, with both

26 the USAO and defendant being released from any stipulations regarding

27 sentencing contained in this agreement, (b) ask the Court to void the

28 entire plea agreement and vacate defendant's guilty plea on any

1   remaining count of conviction, with both the USAO and defendant being

2   released from all their obligations under this agreement, or

3   (c) leave defendant's remaining conviction, sentence, and plea

4   agreement intact.  Defendant agrees that the choice among these three

5   options rests in the exclusive discretion of the USAO.

6   EFFECTIVE DATE OF AGREEMENT

7   24.  This agreement is effective upon signature and execution of

8   all required certifications by defendant, defendant's counsel, and an

9   Assistant United States Attorney.

10   BREACH OF AGREEMENT

11   25.  Defendant agrees that if defendant, at any time after the

12   signature of this agreement and execution of all required

13   certifications by defendant, defendant's counsel, and an Assistant

14   United States Attorney, knowingly violates or fails to perform any of

15   defendant's obligations under this agreement ("a breach"), the USAO

16   may declare this agreement breached.  All of defendant's obligations

17   are material, a single breach of this agreement is sufficient for the

18   USAO to declare a breach, and defendant shall not be deemed to have

19   cured a breach without the express agreement of the USAO in writing.

20   If the USAO declares this agreement breached, and the Court finds

21   such a breach to have occurred, then: (a) if defendant has previously

22   entered guilty pleas pursuant to this agreement, defendant will not

23   be able to withdraw the guilty pleas, and (b) the USAO will be

24   relieved of all its obligations under this agreement.

25   26.  Following the Court's finding of a knowing breach of this

26   agreement by defendant, should the USAO choose to pursue any charge

27   that was either dismissed or not filed as a result of this agreement,

28   then:

1    a.   Defendant agrees that any applicable statute of

2 limitations is tolled between the date of defendant's signing of this

3 agreement and the filing commencing any such action.

4    b.   Defendant waives and gives up all defenses based on

5 the statute of limitations, any claim of pre-indictment delay, or any

6 speedy trial claim with respect to any such action, except to the

7 extent that such defenses existed as of the date of defendant's

8 signing this agreement.

9    c.   Defendant agrees that: (i) any statements made by

10 defendant, under oath, at the guilty plea hearing (if such a hearing

11 occurred prior to the breach); (ii) the agreed to factual basis

12 statement in this agreement; and (iii) any evidence derived from such

13 statements, shall be admissible against defendant in any such action

14 against defendant, and defendant waives and gives up any claim under

15 the United States Constitution, any statute, Rule 410 of the Federal

16 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

17 Procedure, or any other federal rule, that the statements or any

18 evidence derived from the statements should be suppressed or are

19 inadmissible.

20    COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

21    OFFICE NOT PARTIES

22    27.  Defendant understands that the Court and the United States

23 Probation and Pretrial Services Office are not parties to this

24 agreement and need not accept any of the USAO's sentencing

25 recommendations or the parties' agreements to facts or sentencing

26 factors.

27    28.  Defendant understands that both defendant and the USAO are

28 free to: (a) supplement the facts by supplying relevant information

to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 1414 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

29.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

30.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

16

1   promise, understanding, or agreement may be entered into unless in a

2   writing signed by all parties or on the record in court.

3                **PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING**

4          31.   The parties agree that this agreement will be considered

5   part of the record of defendant's guilty plea hearing as if the

6   entire agreement had been read into the record of the proceeding.

7    AGREED AND ACCEPTED

8    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
9    CALIFORNIA

10   TRACY L. WILKISON
     United States Attorney

11

12   _____
      DANIEL J. O'BRIEN
13    Assistant United States Attorney

14

15   *Evan N. Turgeon*                      January 14, 2022
16   _____     _____
      EVAN TURGEON                          Date
17    Trial Attorney

18

19
      _____     _____
20    RICHARD GUSTAVE OLSON, JR.            Date
      Defendant

21

22    *s/J. Michael Hannon*                 January 14, 2022
      _____     _____
23    J. MICHAEL HANNON                     Date
      Attorney for Defendant

24

25

26                      **CERTIFICATION OF DEFENDANT**

27          I have read this agreement in its entirety.  I have had enough

28   time to review and consider this agreement, and I have carefully and

                                        17

thoroughly discussed every part of it with my attorney.  I understand
the terms of this agreement, and I voluntarily agree to those terms.
I have discussed the evidence with my attorney, and my attorney has
advised me of my rights, of possible pretrial motions that might be
filed, of possible defenses that might be asserted either prior to or
at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
of relevant Sentencing Guidelines provisions, and of the consequences
of entering into this agreement.  No promises, inducements, or
representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charges and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____          _____

RICHARD GUSTAVE OLSON, JR.                 Date
Defendant


## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am defendant Olson's attorney.  I have carefully and
thoroughly discussed every part of this agreement with my client.
Further, I have fully advised my client of his rights, of possible
pretrial motions that might be filed, of possible defenses that might
be asserted either prior to or at trial, of the sentencing factors
set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any

1  kind have been made to my client other than those contained in this

2  agreement; no one has threatened or forced my client in any way to

3  enter into this agreement; my client's decision to enter into this

4  agreement is an informed and voluntary one; and the factual basis set

5  forth in this agreement is sufficient to support my client's entry of

6  guilty pleas pursuant to this agreement.

7  *s/J. Michael Hannon*                                    January 14, 2022

8  J. MICHAEL HANNON                                        Date
   Attorney for Defendant Olson

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

31.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney


_____
DANIEL J. O'BRIEN
Assistant United States Attorney



_____        _____
EVAN TURGEON                            Date
Trial Attorney


_____        _____
RICHARD GUSTAVE OLSON, JR.              14 JAN 2022    Date
Defendant


_____        _____
J. MICHAEL HANNON                       Date
Attorney for Defendant




<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand

17

the terms of this agreement, and I voluntarily agree to those terms.

I have discussed the evidence with my attorney, and my attorney has

advised me of my rights, of possible pretrial motions that might be

filed, of possible defenses that might be asserted either prior to or

at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

of relevant Sentencing Guidelines provisions, and of the consequences

of entering into this agreement.  No promises, inducements, or

representations of any kind have been made to me other than those

contained in this agreement.  No one has threatened or forced me in

any way to enter into this agreement.  I am satisfied with the

representation of my attorney in this matter, and I am pleading

guilty because I am guilty of the charges and wish to take advantage

of the promises set forth in this agreement, and not for any other

reason.

_____          14 JAN 2022
RICHARD GUSTAVE OLSON, JR.               Date
Defendant


CERTIFICATION OF DEFENDANT'S ATTORNEY

I am defendant Olson's attorney.  I have carefully and

thoroughly discussed every part of this agreement with my client.

Further, I have fully advised my client of his rights, of possible

pretrial motions that might be filed, of possible defenses that might

be asserted either prior to or at trial, of the sentencing factors

set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

provisions, and of the consequences of entering into this agreement.

To my knowledge: no promises, inducements, or representations of any

kind have been made to my client other than those contained in this