## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICHARD GUSTAVE OLSON, JR.,<br><br>Defendant. | Criminal No. 1:22-cr-144-GMH<br><br>Violations: 18 U.S.C. § 1018 (Making a False Writing); 18 U.S.C. §§ 207(f)(1)(B), 216(a)(1) (Aiding and Advising a Foreign Government with Intent to Influence Decisions of United States Officers) |

## <u>STATEMENT OF THE OFFENSES</u>

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America and the defendant, RICHARD GUSTAVE OLSON, JR., stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offenses; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offenses to which he is pleading guilty.

### Making a False Writing

1.      On January 27, 2015, while serving as the U.S. Ambassador to Pakistan, defendant received from a third-party, first-class, round trip airfare tickets from New Mexico, via Los Angeles, to London and lodging at a hotel in London for the purpose of attending a job interview. Defendant also received from the same third-party lodging at a hotel in London for the period January 30 through February 2, 2015. The value of the airfare exceeded $18,000 and the value of the hotel accommodation exceeded $1,000.

2.      As a senior U.S. Government official, defendant was required to file public financial disclosure reports on an annual basis. The annual reports, known as OGE Forms 278, required the employee to disclose financial matters including income, assets, liabilities, outside employment arrangements, gifts, reimbursements, and travel expenses.

3.      On May 12, 2016, defendant electronically signed and submitted his annual OGE Form 278 for the 2015 calendar year, in which he certified his answers were "true, complete and correct to the best of my knowledge."  In this OGE Form 278, defendant knowingly and willfully failed to disclose, as required, the travel benefits he received, namely, the roundtrip airfare between New Mexico and London and the lodging in London collectively worth over $19,000.

4.      On September 1, 2016, the OGE Form 278 was signed by a Designated Ethics Official for the U.S. State Department who opined, "On the basis of information contained in this report, I conclude that the filer is in compliance with applicable laws and regulations."

### Aiding and Advising a Foreign Government with Intent to Influence Decisions of United States Officers

5.      From November 17, 2015, through November 30, 2016, defendant served as the U.S. Special Representative for Afghanistan and Pakistan and received a base salary of $182,328. Defendant's position and salary placed him within a category of senior government officials subject to a one-year cooling-off period that prohibited him from representing any foreign entity before any employee of any agency of the United States, or from providing aid or advice to any foreign entity with the intent to influence a decision of any employee of the United States.

6.      Within the one-year cooling-off period after his November 30, 2016 retirement, defendant provided aid and advice to the government of Qatar with the intent to influence decisions of U.S. government officials.

7.      Beginning on February 14, 2017, defendant participated in a lobbying effort to convince the U.S. Government to endorse the establishment of U.S. Customs and Border Control preclearance facilities at Doha International Airport in Qatar.  Defendant helped draft a proposal that was sent to the Qatar government which explained how preclearance facilities could be achieved.  Defendant provided "two elements to the proposal in terms of selling this to Washington," recommending that the Qataris leverage their close military partnership with the United States and emphasize the positive experience

the United States experienced with respect to the establishment of similar preclearance facilities in Abu Dhabi.

8.      On or about June 6, 2017, defendant participated in a lobbying effort to convince the U.S. Government to support Qatar in its efforts to oppose a blockade imposed upon it by its neighbors. Defendant's aid included recruiting a retired U.S. General ("the "General"") to join defendant OLSON in providing aid and advice to Qatari government officials with the intent to influence U.S. foreign policy with respect to the Gulf Diplomatic Crisis.

9.      As part of his efforts to aid the Qatar Government, on June 6, 2017, defendant recruited the General, who was working at a Washington D.C. think tank, to enlist his support in the endeavor. On June 7, 2017, defendant met with the General, a third party, and others a hotel in Washington, D.C. at which time the General explained how he would conduct the lobbying and public relations campaign. On June 8, 2017, the third party agreed to pay for the expenses of defendant and the General to travel to Doha to meet with the Emir and representatives of the Qatar Government.  At the time, defendant was being paid $20,000 per month to provide services to the third party.  The third party agreed to pay the General a fee for his efforts.

10.      On June 10, 2017, defendant and the General met with the Qatar Emir and other representatives of his government.  Defendant and the General told the Qatari government officials that they had traveled to Qatar as private citizens, not on behalf of the U.S. government, but noted that they had connections with U.S. government officials that placed them in a position to help Qatar.

11.      During the meetings, the General advised the Qatar government officials to embrace U.S. involvement in resolving the crisis, accept President Trump's offer to mediate, sign a pending deal to purchase U.S. F-15 fighter jets, and use the U.S. Al Udeid Air Base in Qatar as leverage to exert influence over U.S. government officials.  The Qatari officials were further advised to compete with Saudi Arabia's lobbying campaign in the U.S. and to use a full spectrum of information operations to

control the political narrative in the United States.  The General informed the Qatar Government that they would use the U.S. National Security Advisor to further their efforts.

12.     From June 9 through June 15, 2017, with the defendant's knowledge, the General solicited the help of the National Security Advisor and his staff to support Qatar's position with respect to the crisis.  On June 15, 2017, defendant, the General, and a third party met with a senior Qatar Government Official and informed him the U.S. National Security Advisor and another senior U.S. government official had been briefed on their efforts to convince the United States to support Qatar's cause.

13.     On June 16, 2017, the General reported to defendant, the third party, and a senior Qatar Government Official that he personally asked the National Security Advisor to meet with senior Qatar officials and that while an "embassy request has to work its way up, our request will come down from above."

14.     On June 23, 2017, the General stated that two senior Qatar Government Officials would be visiting Washington, D.C. the next week and asked the National Security Advisor to meet with them.

15.     On June 28, 2017, defendant attended a dinner with the General, representatives of the Qatar Government, and members of Congress in an effort to enlist Congress to support the Qatari cause.

_Evan N. Turgeon_
_____
Evan N. Turgeon
Trial Attorney
Counterintelligence and Export Control Section
National Security Division
U.S. Department of Justice

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty pleas to the charges against me. It does not include all of the facts known to me regarding these offenses. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offenses fully.

I have read every word of this Statement of the Offenses or have had it read to me. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offenses and declare under penalty of perjury that it is true and correct.

Date: 27 May 22

_____
Richard Gustave Olson, Jr.
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offenses and have reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offenses as true and accurate.

Date: 5/27/2022

_____
J. Michael Hannon
Attorney for Defendant