**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Case No. 22-cr-144-GMH |
| | : | |
| RICHARD GUSTAVE OLSON, JR. | : | |
| | : | Judge G. Michael Harvey |
| | : | |
| Defendant. | : | |

**MEMORANDUM FOR SENTENCING**
**<u>ON BEHALF OF AMBASSADOR RICHARD B. OLSON, JR.</u>**

Comes now Richard Gustave Olson Jr., through counsel HANNON LAW GROUP, LLP, and CLARK HILL, PLC, and respectfully presents this memorandum for the upcoming sentencing hearing on September 12, 2023.

**BACKGROUND**

Ambassador Olson and his counsel are grateful for the Court's courtesies in their laborious trek to reach a conclusion to the Government's prosecution.  We are also grateful to have served a remarkable man, Ambassador Richard G. Olson, Jr., and fervently look forward to his return to serve his country and others.  This path began on July 17, 2019, at the FBI's Field Office in Washington, D.C., where FBI agents dispatched by AUSA Daniel O'Brien interviewed Amb. Olson.  A second interview followed at his residence on December 17, 2019, where the questions turned, and the agents told Amb. Olson he was a target of O'Brien's investigation. Agents interviewed Amb. Olson spouse Muna Habib in Los Angeles on July 2, 2020.

During a call with Amb. Olson's attorneys on September 2, 2020, AUSA O'Brien reported that he had already prepared a prosecution memo and obtained authority for the filing of an indictment against Amb. Olson.  Nevertheless, Mr. O'Brien inquired whether Amb. Olson

would be willing to cooperate with the Government.  Amb. Olson eventually executed ten tolling agreements in furtherance of the Government's request for cooperation.

To Amb. Olson's attorneys, the Government's theory of the case was a mystifying trail of allegations arising from O'Brien's prosecution of Imaad Zuberi in Los Angeles.  Amb. Olson was questioned during his cooperation with the Government on three separate occasions— October 30, 2020; November 6, 2020; and March 4, 2021, for a total of 16 hours.  The Government saw Amb. Olson as the only available eyewitness to alleged lobbying by retired United States Marine Corps four-star General John R. Allen, the former commander of the NATO International Security Assistance Force and U.S. Forces – Afghanistan (USFOR-A), and later special envoy for President Obama for the Global Coalition to Counter ISIL (Islamic State of Iraq and the Levant).

Both Government prosecutors maintained that General John Allen remained a "subject" of their investigation into FARA violations, and expressed the hope that a cooperation agreement could be reached with Amb. Olson all the way up to the execution of the Plea Agreement by Amb. Olson on January 14, 2022.  The actual plea by Amb. Olson did not take place until June 3, 2022, due to a variety of screw-ups by the Government in obtaining authority to charge Amb. Olson in this District.  Then on June 7, 2022, AUSA O'Brien either negligently or intentionally caused the leak of a 68-page affidavit in support of search warrants to the press.  The affidavit contained protected grand jury material and allegations against Amb. Olson and General Allen. The resultant international press coverage ended the public service career of General Allen and wrecked Amb. Olson's reputation with former colleagues.  On January 31, 2023, the *New York Times*, the *Wall Street Journal* and other news outlets reported that counsel for General Allen

were told by the Government that no criminal charges would be pursued against General Allen. DOJ did not issue such an announcement on its part.

On August 30, 2022, the Presentence Report Writer delivered her DRAFT PSR which recommended a guideline score of 28, twenty levels greater than that agreed upon by the Parties to the Plea Agreement.  Counsel for Amb. Olson were astonished, and failed in their efforts to engage counsel for the Government to dialogue over obvious mistakes.  The Government's refusal to do so, and subsequent ambiguous pleadings, prolonged this matter, as Amb. Olson struggled with understanding how his plea could result in a sentence of incarceration.  This lengthy process prompted the following comment from the Court at the July 7, 2023, hearing to discuss the guideline score:

> I've never seen so much paper filed in a misdemeanor sentencing.  And now you tell me that this is all for nothing.  This is irrelevant, it's immaterial, ultimately, all these arguments the government has been making.  Why have you done all of this?

2023.07.07 Hr. Tr. at 18-19.

On August 3, 2023, the Court issued its Memorandum Opinion and Order which now brings us to the sentencing hearing, with a final guideline score of 8.

## SENTENCING REQUEST

Pursuant to the Court's Memorandum and Order of August 3, 2023, [ECF No. 59] the Total Offense Score for Amb. Olson is 8.  Consequently, as the Court notes in that Memorandum:

> With a criminal history category of I, his Guidelines sentencing range is zero to six months imprisonment.  *See* USSG Ch. 5, Pt. A.  Under USSG §§ 5B1.1 and 5B1.2(a)(1), Defendant is eligible for a sentence of probation lasting at least one and up to five years in lieu of imprisonment.

(ECF No. 59 at 38).

Counsel for Amb. Olson respectfully request that the Court impose a sentence of probation for the following reasons.

### A. THE INTENT OF CONGRESS IS THAT THE APPROPRIATE SENTENCE SHOULD BE ONE OF PROBATION.

Amb. Olson has a Guideline Score of 8; thus, he is within Zone A in the Sentencing Table.  On its face, this means the recommended sentence is zero to six months, but both a federal Statute and Application Notes to the Sentencing Guidelines indicate that the Court should impose a noncustodial sentence.

Congress set out in detail the "Duties of The Sentencing Commission" in Title 28 of the U.S. Code.  Among those duties is the following mandate in 28 U.S.C. § 994(j), which states:

> The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

The Sentencing Commission implemented this statutory mandate through Application Note 4 to § 5C1.1 (Imposition of a Term of Imprisonment):

> If the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3).  *See* 28 U.S.C. § 994(j).  For purposes of this application note, a "***nonviolent first offender***" is a defendant who has no prior convictions or other comparable judicial dispositions of any kind and who did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the offense of conviction.  The phrase "comparable judicial dispositions of any kind" includes diversionary or deferred dispositions resulting from a finding or admission of guilt or a plea of *nolo contendere* and juvenile adjudications.

The Sentencing Commission has emphasized the significance of its "Commentary" sections, of which this Application Note is a part, by stating:

The Commentary that accompanies the guideline sections may serve a number of purposes.  First, it may interpret the guideline or explain how it is to be applied.  Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal.  *See* 18 U.S.C. § 3742.  Second, the commentary may suggest circumstances which, in the view of the Commission, may warrant departure from the guidelines.  Such commentary is to be treated as the legal equivalent of a policy statement.  Finally, the commentary may provide background information, including factors considered in promulgating the guideline or reasons underlying promulgation of the guideline.  As with a policy statement, such commentary may provide guidance in assessing the reasonableness of any departure from the guidelines.

U.S. Sentencing Guidelines Manual § 1B1.7 (U.S. Sentencing Comm'n 2018).

The Supreme Court also recognizes the importance of the Commission's Commentary. In *Stinson v. United States*, 508 U.S. 36, 38 (1993), the Supreme Court held that courts should treat statutes, guidelines, Commentary, and Application Notes as authoritative, unless doing so "violates the Constitution or federal statute or is inconsistent with or plainly erroneous reading of the" U.S. Sentencing Guidelines.  Application Note 4 to § 5C1.1 neither violates the Constitution nor federal statutes.

Application Note 4 to § 5C1.1 also is not "inconsistent with or [a] plainly erroneous reading of the" U.S. Sentencing Guidelines.  Courts have interpreted the language of "inconsistent with or plainly erroneous" narrowly to mean that the application notes will be followed as long as they are not so "implausible as to be invalid." *United States v. Plunkett*, 125 F.3d 873, 875 (D.C. Cir. 1997).  It is not enough for the commentary to simply be a less likely interpretation of the Guidelines. *Id.* (citing *United States v. Robinson*, 86 F.3d 1197, 1199 (D.C. Cir. 1996)).

The Sentencing Commission has recently revisited the intent of Congress in enacting 28 U.S.C. § 994(j).  Looking back on years of sentencing data, the Commission plans to amend the Sentencing Guidelines in a number of ways to benefit first-time nonviolent offenders.  First on

November 1, 2023, the Commission will propose striking Application Note 4 to § 5C1.1 and inserting a new Application Note 10(a) to § 5C1.1, which states:

> If the defendant received an adjustment under § 4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range is in Zone A or B of the Sentencing Table, a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3), is generally appropriate. *See* 28 U.S.C. § 994(j). 88 Fed. Reg. 28254, 28271-72 (May 3, 2023).

The Sentencing Commission stated that it intends to release this amendment so that the Sentencing Guidelines better reflect the Congressional intent expressed in 28 U.S.C. § 994(j). *Id.* at 28274. By changing the language from "should consider" to "generally appropriate", the Commission intends that a sentence of probation for first time offenders should be appropriate under ordinary circumstances. *See, id.* at 28274 ("The changes to the Commentary to § 5C1.1 respond to Congress's directive to the Commission at 28 U.S.C. 994(j), directing the Commission to ensure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense.").

This intent is also reflected through other amendments the Commission plans to enact on November 1, 2023. The Commission proposes an amendment in Part C to Chapter 4 to be entitled "Adjustment for Certain Zero-Point Offenders." This amendment actually provides that a qualified, nonviolent first-offender will be eligible for a decrease in offense levels by 2 levels. *Id.* at 28271. Those eligible for the two-point deduction are offenders who have no criminal history and are not being charged for a violent crime or a crime that causes substantial financial hardship. *Id.* Much of the criteria for a "nonviolent first offender" now contained with Application Note 4 to § 5C1.1 are now contained within the criteria to receive the two-point

deduction under the amendment.  *Cf. Id.* at 28271 and U.S. SENTENCING GUIDELINES MANUAL §

5C1.1 cmt. n. 4 (U.S. SENTENCING COMM'N 2018).

Overall the amendments by the U.S. Sentencing Commission better reflect the

intent of 28 U.S.C. § 994(j) and address ongoing sentencing issues for those offenders

with zero criminal history points.  *See id.* at 28273-74.  In the fiscal year 2021, 39.2% of

offenders with zero criminal history points received a sentence within the guideline, as

compared to 47.4% of offenders with one criminal history point.  *Id.* at 28274.  In

addition, zero criminal history point offenders have a much lower recidivism rate than

any other offenders.  *Id.* at 28273.

### B.  SENTENCING PRECEDENTS SUGGEST A NONCUSTODIAL SENTENCE IF APPROPRIATE.

In ECF No. 37 at footnote 1, counsel for Amb. Olson reported the following:

At the time of execution of the Plea Agreement, counsel for Ambassador Olson had found only one case in which the government had indicted a public official with making a false statement on an OGE Form 278.  *United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020).  We found two cases involving its predecessor SF 278.  *United States v. Michael Espy*, No. 97-cr-335 (D.D.C., 1997); *United States v. Ronald Blackley*, No. 97-cr-155 (D.D.C., 1997).  We also located a case from the U.S. Attorney's Office for the Central District of California, reported by the U.S. Office of Government Ethics in its 2020 annual "Conflict of Interest Prosecution Survey" of cases involving the conflict of interest statutes (18 U.S.C. §§ 202-209).  That case was resolved by the USAO for the Central District of California with a Non-Prosecution Agreement and a fine.

Counsel for Ambassador Olson also were unable to find any case charging an offense under the Cooling Off Period statute (18 U.S.C. § 207(f)) in either the CDCA or the DDC.  We also found no reported case charging an offense under 18 U.S.C. § 207(f) in Westlaw or in our review of the annual "Conflict of Interest Prosecution Survey" issued by the Office of Government Ethics for the past 30 years.  Counsel for Ambassador Olson reported this information to the government shortly before the parties agreed to the final Plea Agreement.

Counsel have updated this research, and found no additional cases involving the False Writing offense in violation of 18 U.S.C. § 1018 or the Cooling-Off Period offense in violation of 18 U.S.C. §§ 207(f)(1)(B) and 216(a)(1).

WHEREFORE, counsel for Amb. Olson respectfully request that the Court impose a sentence of one year's probation with only mandatory conditions under USSG §5B1.3. Conditions of Probation.

Dated: September 8, 2023

Respectfully submitted,

HANNON LAW GROUP, LLP

_s/J. Michael Hannon_
J. Michael Hannon, #352526
1800 M Street, NW, Suite 850S
Washington, DC 20036
Tel: (202) 232-1907
Fax: (202) 232-3704
jhannon@hannonlawgroup.com

CLARK HILL, PLC

_s/Russell D. Duncan_
Russell D. Duncan
1001 Pennsylvania Ave. Suite 1300 South
Washington, DC 20004
(202) 640-6637
rduncan@clarkhill.com

*Attorneys for Defendant Richard Gustave Olson, Jr.*